Case 7.

## Northern Bank *vs.* Farmers Bank.

ORD. PET.

APPEAL FROM FAYETTE CIRCUIT.

1. Cutting a bank note into two parts, for the purpose of transmission by mail, does not exonerate the bank from which it issued from its payment.
2. But if a bank note be mutilated in a material part, for the fraudulent purpose of imposing it upon the public, and defrauding the bank from which it issued, it is no longer binding on the bank.

[The facts of the case are stated inthe opinion of the court.—REP.]

*M. C. Johnson*, for appellant.

*James Harlan*, for appellee—

The alteration, mutilation, and patching were done with the fraudulent intent to defraud the Farmers Bank in this, that by the operation more notes were concocted and manufactured by this process than the bank ever issued or received value for. If the bank

issued and put into circulation ten notes each of the denomination of $100, and received therefor $1,000, or some sort of security estimated to be of that value, it became bound to redeem on demand the $1,000 in coin and no more; but if the holder by mutilating, changing, and patching converted the ten notes into eleven notes of $100 each the bank would be apparently liable for $1,100 instead of $1,000, and would consequently be defrauded out of $100.

The extent of the fraud does not change the principle. The answer charges that the mutilation, &c., was *willfully* done, and for the *"fraudulent* purpose of ' forming and *forging* out of a certain number of ' Farmers Bank notes a *larger number* of notes," &c. This allegation is admitted by the demurrer.

If the altered and mutilated notes remained in the possession of the person who committed the fraudulent acts, and were presented by him to the bank for redemption, would there be any doubt he could not maintain an action for enforcing their payment? If that be so, can any other holder be placed in a more favorable position? More especially as the bills on their faces showed they had been mutilated, changed, and patched. Bank notes that have been *fraudulently* changed and mutilated, for the purpose of defrauding the banks that issued them by increasing the amount to be redeemed, are not in fact the evidences of debts created and put into circulation by the bank. A promissory note executed by an individual, and delivered to the payee, and by him fraudulently changed and mutilated, could not be enforced by such payee, nor by any person to whom he might assign it. The assignee could not occupy a more favorable position than the assignor. Upon the same principle, a note payable to bearer could not, form the basis of an action, merely because he gave value, any more than a bank or private individual could be compelled to pay a forged note. "The fraudulent making or *alteration* of a writing, to the prejudice of another man's rights," is a forgery. (4 *Blackstone,*

NORTHERN B'NK  247.) "To constitute this offense, it is also essential
        vs
FARMERS BANK. ' that there be an *intention to defraud;* but it is not es-
' sential that any person be actually defrauded, or
' that any act be done towards the attainment of the
' fruits of the crime, other than making or altering
' the writing." (3 *Greenleaf on Evidence, sec.* 103,
*page* 97.)

The paper purporting to be a bill for $100, upon
which the action is founded, was never issued by the
Farmers Bank. It has been fraudulently altered
with an intention to defraud the bank and the com-
munity. That fraudulent change and alteration is
apparent on the face of the bills, and it was receiv-
ed by the officers of the Northern Bank with notice
that it had been so altered and changed, and the in-
tent with which it was done. It is unlike the case of
the *Commercial Bank vs. Kennedy,* of the last term, in
which the notes were cut into two pieces for the pur-
pose of safety in their transmission by mail. In that
case there was no *intention to defraud* either the bank
or the public. The separation of the notes was for
an honest and laudable purpose. There was no
fraudulent alteration, mutilation or patching of the
notes.

It seems to me therefore the judgment is correct
and ought to be affirmed.

Dec. 9, 1857.    Judge DUVALL delivered the opinion of the court.

This was an action by the appellant against the
appellee to recover $106, the principal and interest
of a note for $100, purporting to have been issued by
the Farmers Bank

The answer of the appellee is substantially this:
That the note sued on, since it was issued, has been
fraudulently mutilated and altered, in a material
part, by some person who was, at the time, the hold-
er thereof; that such holder fraudulently tore off from
said note a large part thereof, including part of the
name of this bank, the words promising to pay, part
of the statement of the sum to be paid, part of the

statement of where the note was to be payable, the
date of the note, the signature of the president, with a considerable portion of the engraving and lettering upon said note that had been put thereon to give it identity and to protect the community generally, and the defendant particularly, against the counterfeiting of such notes; that the portions of said notes so torn off, were in part replaced by parts of other similar notes of the defendant, which had, in like manner, been mutilated with the same fraudulent purpose, in part by other engraved pieces of paper; all which were applied to the remains of the original note to conceal the mutilation thereof; that all this mutilation, alteration, and patching was done with the fraudulent purpose of forming and forging out of a certain number of defendant's notes, a larger number of notes, each of which should contain a part of a genuine bank note, and all of which were intended to be passed on the community as genuine bank notes, and as such defendant was required to redeem them; that this alteration, &c., was done without the knowledge or consent of defendant, but sorely against its will, and to the great detriment of it, and of the community generally; that the plaintiff received said note for full value, after it had been so altered and mutilated, with such notice of the fraudulent mutilation and alteration as the mutilated appearance of said note affords.

The circuit court overruled a demurrer to the answer, and to reverse that judgment the Northern Bank prosecutes this appeal.

The sole question to be considered, therefore, is whether the facts set forth in the answer, (admitted to be true by the demurrer,) are sufficient to exonerate the appellee from any liability upon the note sued on.

Although the notes of our incorporated banks are issued with the intent that they shall circulate as currency or money, and do usually pass and are received as such, yet they are to be regarded, for many

NOTRHERN B'NK
vs.
FAAMERS BANK.

purposes, as the evidences of debts due by the bank to the holder, upon which the latter may sue and recover by appropriate action. Hence it has been held that where a bank note has been lost or destroyed the holder may be allowed to prove its contents, and if this be satisfactorily made out, he is entitled to recover; or if the note be not lost, but is merely impaired by accident, or even by design, if such design *be not to injure the maker*, or to cancel the debt, the principle of law is the same. (*Martin vs. Bank U. S.* 4 *Wash. Cir. R.* 253.)

1. Cutting a bank note into two parts, for the purpose of transmission by mail, does not exonerate the bank from which it issued from its payment.

Upon the same principle, it was decided by this court in the case of the *Commercial Bank vs. Benedict*, &c., (ante, 307,) that the cutting of a bank note into two parts, for the purpose of remitting them separately by mail, does not discharge the bank from the debt, but that it may be recovered by the holder of one of the parts, upon sufficient proof that the other has been lost or destroyed, and that he is the true and *bona fide* owner of the debt.

2. But if a bank note be mutilated in a material part, for the fraudulent purpose of imposing it upon the public, and defrauding the b'k from which it issued, it is no longer binding on the bank.

But it is quite obvious that these principles have no application to the facts of the present case. The note in question was not mutilated by accident, nor for an innocent or honest purpose; on the contrary, the admitted object and necessary effect of the mutilation was to defraud the bank, and to injure the community. It is shown that by the ingenious contrivance described in the answer, a larger number of notes, each containing a part of a genuine bank note, was manufactured by the fraudulent holder, or holders, all of which are intended to be passed on the community as genuine bank notes, and which the appellee will be compelled to redeem. It appears, moreover, that those portions of the note most essential to its validity and indentity had been torn off, for the fraudulent purpose mentioned; consisting of part of the name of the Bank; the words promising to pay; part of the statement of the sum to be paid; of the place where payable; the date; the signature of the president; a portion of the engraving and let-

tering, by which it was intended to give identity to the note, and to protect the community and the bank against counterfeiting and fraudulent alterations; that the portions so torn off were replaced by other engraved pieces of paper, and by parts of other similar notes of appellee which had, in like manner been mutilated with the same fraudulent purpose, all which were applied to the fragments of the original note to conceal the fraudulent mutilation to which it had been subjected.

It seems to us that the simple statement of these facts is sufficient to demonstrate that the safety of the community and the just rights of the bank alike require that the law should interpose its protection against forgeries and frauds of this character, the result of which must be inevitable loss and injury to both. Such protection is not at all inconsistent with the rights of the innocent holder of· a genuine bank note. Those rights it is the policy of the law to guard with the utmost vigilance, and hence we would by no means be understood as deciding that any and every mutilation or impairment of a bank note, however fraudulent the purpose with which it was done, would have the effect to discharge the bank from liability upon such note in the hands of a *bona fide* holder. The case before us involves no such question.

But it can hardly be said that the appellant occupies the attitude of an innocent holder. On the contrary, it seems to us that the facts authorize the inference that the note itself must have presented, upon its face, such unmistakable evidences of fraud and forgery, as amounted to notice, or at any rate, such as ought to have deterred any reasonably prudent person from receiving it in the ordinary course of business.

In any aspect of the case, therefore, we are satisfied that the facts set forth in the answer constituted a valid defense, and that the demurrer was properly overruled.

Wherefore, the judgment is affirmed.